BARBARA L. KROHN, APPELLEE, v. FRANK J. KROHN, APPELLANT.

347 N.W.2d 869

Filed April 27, 1984. No. 83-754.

Kent E. Person of Person, Dier, Person & Osborn, for appellant.

Gene C. Foote II and Dale A. Norris of Whelan, Foote & Scherr, P.C., for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

CAPORALE, J.

The respondent father, Frank J. Krohn, appeals from the denial of his application for custody of the two minor sons of the parties, who are presently in the custody of and living with the petitioner mother, Barbara L. Krohn. We affirm.

The marriage of the parties was dissolved on October 30, 1981. Custody of Nick Ryan, born December 1, 1975, and Joseph Max, born May 21, 1978, the two sons of the parties, was awarded to the mother. On September 21, 1982, the father commenced these proceedings, alleging a change in circumstances and seeking custody of the two children and a termination of his child support obligation. Although the mother counterclaimed for an increase in child support payments, she lodges no complaint to the trial court's denial of that request.

Our obligation in this appeal is to review the record de novo to determine whether a change in circumstances has occurred which justifies modification of the earlier custody decree. In making that review we are required to make independent conclusions of fact without reference to the conclusions

reached by the trial court, recognizing, however, that where there is a conflict in the evidence, we will give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than the opposite. *Dennis v. Smith, ante* p. 147, 347 N.W.2d 873 (1984); *Haake v. Haake,* 215 Neb. 889, 341 N.W.2d 911 (1983).

As the applicant, the father's burden is to establish that there has been a change of circumstances such as to indicate that the mother is no longer fit to have custody or that the best interests of the children require the change he requests. *Dennis v. Smith, supra; Hinz v. Hinz,* 215 Neb. 335, 338 N.W.2d 442 (1983); *Dunne v. Dunne,* 211 Neb. 636, 319 N.W.2d 741 (1982).

At all times since the dissolution decree the father has continued to farm and live at the house which the parties occupied as the family dwelling during their marriage. The house is owned by his parents' farm corporation and is located near Holdrege, Nebraska. He remarried on August 8, 1982.

The mother is employed and lives at Hastings, Nebraska, and supports herself and the children on her monthly earnings of approximately $600 and the $250 child support paid by the father. While she is at work, the children stay at a child care center.

The children have a comfortable, loving relationship with their mother and are neat, properly fed, and properly clothed. The mother is a concerned parent who takes an active interest in the children and in Nick's schoolwork. The father is also a concerned parent who likewise takes an interest in his children and in the older boy's schoolwork.

The older son has a learning disability which predates the dissolution. He is enrolled in a special education program and is making progress. Both children have been receiving counseling to help them deal with the trauma of the dissolution of their parents' marriage.

Although both children swear, there is no showing

they learned to do so from their mother or her associates. There is evidence the father has sworn in the past.

During a 200-day period in which a private investigator retained by the paternal grandmother observed the mother and the children, there were instances when the children were seen playing on, around, and in the mother's car while it was parked in the driveway to her house. There were also instances when the children were observed playing near, around, and in a relatively well-traveled street. The mother exerts efforts to teach the boys not to play in the street, but they have not yet fully responded to that teaching. On one occasion the mother was photographed helping the younger boy urinate behind a tree or bush alongside the house. The mother explained that the need was urgent, and rather than have the child soil his clothes, she elected to have him relieve himself on the spot.

For a period of time after the dissolution through approximately April of 1983, the mother dated and kept company with one Shaw. Shaw would spend time with the mother and the children at the mother's home. He, the mother, Nick, Joseph, and Shaw's two children took a vacation together and were out together on other occasions. Shaw would occasionally babysit and discipline the children. Shaw and the mother engaged in sexual activity at the mother's home at times when the two boys were in, around, and about the house. There is no showing, however, that the boys were exposed to the activity or that they were damaged in any way by the sexual conduct of their mother and Shaw.

A clinical psychologist engaged by the father to evaluate the boys concluded that the children need more structure in their lives than they presently receive, that they express confusion over the situation between their parents and the variation in the rule systems from one house to the next, and that they exhibit some anger toward their mother. The evi-

dence also is that the father bemoans, in the presence of the children, the fact that they must live with their mother. The psychologist concluded that the home the father is presently maintaining could provide the needed stability. He testified further, however, that he could not evaluate the present situation and had no opinion as to whether the mother could provide a good home for the children.

The trial judge rejected the father's invitation to interview the children in chambers. No offer of proof was made as to what the children were expected to say.

The father's four assignments of error merge to claim that the district court erred in failing to (1) consider the mother's sexual conduct, (2) find that the father could provide a more stable environment, and (3) interview the children in chambers.

It is true, as the father argues, that in *Hinz v. Hinz*, 215 Neb. 335, 338 N.W.2d 442 (1983), we stated that sexual misconduct is a factor which may be considered in deciding the issue of custody, and may support a finding of a change of circumstances sufficient to conclude that the one who had custody is no longer fit for that purpose or that the best interests of the child require such change. That is all such conduct is, however, "a factor to be considered," among others. *Ritchey v. Ritchey*, 208 Neb. 100, 302 N.W.2d 372 (1981). The other factors considered in *Hinz* were that the mother used vile, obscene language around the children, that the children were also using similar language, that there was an indication of physical abuse by the mother, and some suggestion that the children were not as neat and clean as they should be and, at one period of time at least, were not being adequately fed. Those are not the circumstances here. We find the father's first assignment of error to be without merit.

The father next contends the evidence shows he was better able to provide a stable environment for the children, and on that basis it was error not to

change the prior custody order. We do not agree.

The record convinces us that part of the children's anxiety and confusion over the dissolution arises from the tension between the parties as to the custody arrangement and the comments which are made in the presence of the children as to that situation. Part of the confusion and anxiety rests with the fact that the mother's home and the father's home are operated somewhat differently. As each parent has the right to visit the children, that will continue no matter who has custody. The clinical psychologist did not say that the mother was not providing or could not provide a stable home, only that the father could, and that more stability was needed. It seems that a first step toward achieving that end would be to continue the present custody arrangement and not subject the children to further confusion as to where they are to make their home.

As to the last assignment of error, the trial judge wisely exercised his discretion by declining the father's invitation to interview the children in chambers. Given our de novo review, such a practice is of questionable value unless an adequate record is made. Moreover, the young and impressionable age of the children would entitle any expression as to their preferred living arrangements to little, if any, weight. In the final analysis, no court can abdicate its obligation to determine what it deems to be in the best interests of the children, based upon the totality of the circumstances. Neb. Rev. Stat. § 42-364(1)(b) (Cum. Supp. 1982); *Dennis v. Smith,* *ante* p. 147, 347 N.W.2d 873 (1984).

In any event, no offer of proof having been made as to what the children were expected to tell the trial judge, any error in that regard was waived. See, Neb. Rev. Stat. § 27-103 (Reissue 1979); *Sherman County Bank v. Kallhoff,* 205 Neb. 392, 288 N.W.2d 24 (1980).

We conclude the father has failed to sustain his burden of proving a change of circumstances such

as to establish that the mother is unfit to have custody or that the best interests of the children would be served by ordering a change in their custody.

AFFIRMED.