JERRY V. KENNEDY, APPELLEE, V. PATSY J. KENNEDY, APPELLANT.

380 N.W.2d 300

Filed January 24, 1986.   No. 85-361.

Judy L. Raetz of Raetz & Bergfield, for appellant.

David E. Veath of Fisher & Veath, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

Patsy J. Kennedy (Ms. Kennedy) appeals from an order entered by the district court for Dawes County, Nebraska, changing the custody of her two minor children from herself to her former husband, Jerry V. Kennedy (Mr. Kennedy). We believe that the district court was in error, and for that reason we reverse and remand with directions.

The record discloses that the parties were divorced on February 2, 1981. The decree entered in connection therewith specifically found that both parents were fit and suitable but, nevertheless, awarded custody of the two minor children to the mother. On January 24, 1985, Mr. Kennedy moved to have custody of the children changed to him. In the affidavit attached to his motion, he stated that he was previously unable to provide a suitable home for the children but that he is now able to do so. He further alleged that Ms. Kennedy had been cohabiting "with various different men" and that the children had been under stress due to their circumstances of living with their mother. In response Ms. Kennedy moved to have the father obtain or pay for health insurance for the children. The original decree ordered Mr. Kennedy to obtain such health insurance for the children, but when he quit his previous job he

lost his health coverage and has not since obtained any additional health coverage for the children.

The evidence establishes that after the divorce Ms. Kennedy did, at different times, live with two men to whom she was not married. She also lived with her current husband for approximately 6 months prior to marrying him, but at the time of trial had been married for nearly a year and was providing a stable home for the children. Aside from the fact that the parties lived together without first marrying, there is no evidence to indicate that the children were in any other way adversely affected by the relationship. Quite to the contrary, the record affirmatively establishes that the children have a good relationship with Ms. Kennedy's current husband and have had that relationship since the time he lived in the family home. The record further discloses that although Mr. Kennedy knew about Ms. Kennedy's living arrangements, he never made complaint until he sought change of custody.

Mr. Kennedy also introduced evidence that Ms. Kennedy permits the 14-year-old son in her custody to drink beer at home. Ms. Kennedy confirmed that she does permit her son to drink beer in front of her because she would rather have him drink at home in moderation than "go sneaking around drinking." She further testified that, while she permits him on occasion to drink beer, she does not encourage her son to use alcohol. Additionally, the record discloses that Mr. Kennedy has permitted his son to chew tobacco and has, since an early age, provided him with the tobacco. Although the son does have some kidney problem, there was no evidence in the record to indicate that the drinking of beer in any manner medically affected the son. In fact, according to letters from the son's doctor, the son was doing well physically.

Mr. Kennedy further maintained that if the children were permitted to live with him they would obtain a better home life, would not be permitted to watch improper programs on television, and would receive a religious education, which they were not receiving with the mother.

At the trial Ms. Kennedy's counsel requested the court to require the presence of the court reporter to record the closing arguments, the remarks of the guardian ad litem, and the

court's comments from the bench. The court refused to provide the court reporter. Unfortunately, because the court reporter was not present when the court denied counsel's motion, we do not know the reason for the denial. In denying the motion for new trial, however, the district judge, on the record, said:

> I am convinced in this case that the Supreme Court, if it gets a look at this case, will decide the case based on the facts that were presented. It tries the cases de nobo [sic] on the record, it doesn't care what statements a district judge, a trial judge makes in support of his own opinion. It just looks at the facts, see if they support the decision, and it [sic] they don't support the decision I don't think that there is anything that a judge can say in making his decision that will cause them to affirm him.

We turn first to the question of whether there was a material change of circumstances which justified the district court's changing the custody of the children. An examination of the record discloses that but for the fact that more than a year prior to the hearing seeking to change custody of the children Ms. Kennedy at different times lived with three men, at times when she was not married to any of them (though ultimately she did marry the last one), no other significant material change of circumstances occurred from the time the decree was originally signed. There is no evidence that the children were in any manner adversely affected by the living arrangements or exposed to any sexual activity. Where, as here, the evidence discloses that although the mother may have engaged in sexual activity with men not her husband when the children were home, absent a showing that the children were exposed to such activity or were in any manner damaged by reason of such activity, such sexual activity does not justify a change in custody. See, *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984); *Helgenberger v. Helgenberger*, 209 Neb. 184, 306 N.W.2d 867 (1981). This is particularly true where the events occurred more than a year prior to the custody hearing. In *Riddle v. Riddle, ante* p. 109, 112, 375 N.W.2d 143, 145 (1985), we said:

> While there are no hard-and-fast rules which can be set down in cases of this nature, it appears to us that in

determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. What we are interested in is the best interests of the child now and in the immediate future, and how the custodial parent is behaving now is therefore of greater significance than past behavior when attempting to determine the best interests of the child.

The record establishes that for at least a year prior to the custody hearing Ms. Kennedy was happily married and providing her children with a stable home environment.

Nor does the fact that Ms. Kennedy has permitted the 14-year-old son to occasionally drink beer constitute a material change of circumstance justifying a change of custody. Although this court does not approve of minors violating the laws regarding the use of either alcohol or tobacco, this court is not prepared to determine what is more harmful to a young boy, occasionally drinking beer or occasionally chewing tobacco, particularly in view of the fact that the Legislature has deemed it appropriate to provide that a minor may possess alcohol in his or her permanent place of residence. See Neb. Rev. Stat. § 53-180.02 (Reissue 1984).

Nor does the mere fact that Mr. Kennedy now maintains that he has a home more stable than it was at the time of the decree justify removing the children from Ms. Kennedy and placing them with Mr. Kennedy. As we observed in *Hoschar v. Hoschar*, 220 Neb. 913, 915, 374 N.W.2d 64, 66 (1985):

The disruption of the marriage itself is difficult enough for children to handle. Their custody, therefore, should not be a continuing "running gun battle." The best interests of the children are not served by constant custody disputes and a shifting of custody control from one parent to the other. Rather, to the extent we can, we should attempt to provide some sense of stability for the children.

We have frequently held that " '[a] decree awarding custody of minor children and fixing child-support payments is not subject to modification in the absence of a material change in circumstances occurring subsequent to the entry of the decree

of a nature requiring modification in the best interests of the children.' " *Youngberg v. Youngberg*, 193 Neb. 394, 396, 227 N.W.2d 396, 397 (1975). The burden of proving the existence of a material change of circumstances affecting the best interests of the children is on the party seeking modification of the custody award. See *Hoschar v. Hoschar, supra*. An examination of the record fails to disclose how or in what manner Mr. Kennedy has met his burden. For that reason we find that the district court was in error in changing the custody of the children from Ms. Kennedy to Mr. Kennedy.

That leaves us, then, with the question of whether the district court erred in denying Ms. Kennedy's request for a court reporter to be present during closing arguments, statement by the guardian ad litem, and the decision of the court. In view of the fact that we have found the district court to be in error in its decision, addressing the question of the court reporter's presence might not be relevant. Nevertheless, we address the issue because we believe that this matter is of sufficient public interest that we should comment in an effort to avoid a repetition of this matter.

Contrary to the district court's observation that the Supreme Court is not interested in what the district court has to say, the rules of this court require the district court to provide a court reporter whenever a litigant requests the presence of the court reporter. Rule 4 of the Nebraska Supreme Court Rules Relating to Official Court Reporters, effective October 1, 1976, and amended November 30, 1979, provides in part as follows:

4. GENERAL QUALIFICATIONS AND DUTIES:

. . . .

b. The court reporter *shall* make a verbatim record of the following:

. . . .

(2) The testimony *or other oral proceedings*.

. . . .

(4) The opening statements and *closing arguments, at the request of counsel*, any party, or the court.

(Emphasis supplied.)

Rule 4b requires the court reporter to make a verbatim recording of closing arguments when requested by counsel. The

district court's refusal to permit the court reporter to perform the duty imposed upon the court reporter by our rules was in error. Furthermore, by providing in rule 4b(2) that the court reporter shall make a verbatim record of "[t]he testimony or other oral proceedings," we intend that any portion of the proceedings, including comments made by the court from the bench, shall be recorded by the court reporter. While it is true, and we have previously held, that if a judge reaches a right decision for the wrong reason the decision will not be reversed, that does not mean that rule 4b(2) may be disregarded. The district court was in error in refusing the requests of Ms. Kennedy's counsel to have a court reporter present. The parties are entitled to the benefits afforded to them by reason of the provisions of rule 4b, and the trial court may not deny those benefits to the parties when a proper request is made.

To the extent that our ruling here is contrary to our previous holdings in *Egenberger v. National Alfalfa Dehydrating & Milling Co.*, 164 Neb. 704, 83 N.W.2d 523 (1957), *Sandomierski v. Fixemer*, 163 Neb. 716, 81 N.W.2d 142 (1957), or other cases to similar effect, all of which were decided prior to the adoption by this court of rule 4b, they are superseded by our holding herein.

The decision of the district court is reversed and the cause remanded with directions to dismiss the application of Mr. Kennedy seeking to change the custody of the minor children.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.