LORI S. ANDERSON, APPELLANT, V. RICKY D. ANDERSON, APPELLEE.

554 N.W.2d 177

Filed October 1, 1996.   No. A-95-371.

Frederick S. Cassman and Sandra L. Maass, of Abrahams, Kaslow & Cassman, for appellant.

David C. Mitchell, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

On March 1, 1994, the district court for Douglas County entered a decree which dissolved Ricky D. and Lori S. Anderson's marriage and awarded custody of their two children to Lori. On July 27, Ricky filed an application to modify the divorce decree. The requested modification would prohibit both Lori and Ricky from having members of the opposite sex spend the night with them when the children were present. The district court granted Ricky's application.

## FACTUAL BACKGROUND

Ricky and Lori have two children: Lindsey, born September 21, 1982, and Blake, born December 4, 1990. The Andersons were separated in February 1992. At the time of the divorce in 1994, Lori was involved in an intimate relationship with Kirk Gardner, which had started in approximately September 1992. Shortly after the divorce decree was entered, Ricky became aware that Lori and the children were spending weekends in Sioux City, Iowa, at Gardner's residence, which is the genesis of the motion to modify the decree.

At the hearing to modify the decree, Lori testified that for the first 6 months she and the children visited Gardner in Sioux City, they spent the weekend nights in a motel. After the children adjusted to Lori's relationship with Gardner, however, Lori and the children began staying at Gardner's residence. When staying at Gardner's residence, Lindsey and Blake would sleep in separate bedrooms and Lori would sleep in Gardner's bedroom. Likewise, when Gardner was visiting Omaha, Lori would allow Gardner to spend the night at her residence.

Lori explained that she would lock the bedroom door so the children would not be exposed to her intimate relationship with Gardner. She further testified that she noticed no adverse effects upon the children and that, to the contrary, the children seemed excited when visiting Gardner. Ricky testified: "I think that just morally is the main thing. Like I said before, I don't think it's right that you spend the night with somebody of the opposite sex when you're not married with the minor children there."

The court found good cause to grant Ricky's application to modify the divorce decree. In explaining its decision, the court stated: "The Court does place considerable emphasis on the fact that Petitioner stayed at a motel during the first six months of visits to Sioux City, Iowa."

## ASSIGNMENTS OF ERROR

Lori alleges the district court erred (1) in modifying the divorce decree to prohibit her from having overnight guests of the opposite sex when the children are present and (2) in ordering the parties to abide by the terms of the modified divorce

decree pending appeal when a supersedeas bond had been posted.

## STANDARD OF REVIEW

█ In an appeal involving an action for dissolution of marriage, an appellate court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991).

## ANALYSIS

Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 1994) states in part:
In determining *custody arrangements* and the *time to be spent* with each parent, the court shall consider the best interests of the minor child which shall include, but not be limited to:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child.

(Emphasis supplied.)

█ Typically, when seeking to modify a divorce decree concerning custody, support, or visitation arrangements of the children, the party seeking modification has the burden to show a material change of circumstances affecting the best interests of the children. When, however, the party seeks modification of a divorce decree within 6 months, as provided by Neb. Rev. Stat. § 42-372 (Reissue 1993), such modifications can only be made upon a showing of good cause after notice has been given to all interested parties and a hearing has occurred. *Norris v. Norris*, 2 Neb. App. 570, 512 N.W.2d 407 (1994). Because Ricky applied to modify the divorce decree within 6 months, under *Norris* and §§ 42-364 and 42-372, the district court could modify custodial and visitation arrangements upon a showing of

good cause, provided that doing so was in the children's best interests.

In addition to the statutory considerations listed above from § 42-364(2) to determine the children's best interests, the Nebraska Supreme Court has also considered

the moral fitness of the parents, including their sexual conduct; the respective environments each offers; the emotional relationship between the child and the parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the capacity of each parent to provide physical care and to satisfy the needs of the child.

*McDougall v. McDougall*, 236 Neb. 873, 877, 464 N.W.2d 189, 192 (1991). Furthermore, even when the parties stipulate what constitutes the children's best interests, the courts should reach independent conclusions based upon the evidence. *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991). See, also, *Norris, supra.*

In evaluating whether limitations which prohibit parents from having members of the opposite sex stay over when children are present, we find *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996), helpful. In that case, although remarried at the time of the custody proceedings, the mother admitted that she had violated a provision in the divorce decree prohibiting her from cohabitating with men to whom she was not married. The Nebraska Supreme Court found:

The violation of a court decree [prohibiting cohabitation] is unquestionably a serious matter. But it is the best interests of the son which must be our paramount concern. While it is true that evidence concerning the moral fitness of the parents, including sexual conduct, can be considered as a factor in determining a child's best interests . . . *absent a showing* that the mother's cohabitation *adversely affected* her son, we do not give this factor much weight.

(Emphasis supplied.) *Id.* at 460, 544 N.W.2d at 101, citing *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986).

In *Kennedy,* even though the mother had been cohabitating with men prior to remarrying, the Nebraska Supreme Court

found she could retain custody, unless it was shown the children were exposed to sexual activity or otherwise adversely affected. See, also, *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984) (where there was no showing that children were exposed to sexual activity or otherwise damaged, mother could retain custody of children).

Ricky argues that the court should not have to wait until the children suffer physical or mental harm as a result of Gardner's overnight stays to impose the proposed limitations. Ricky cites *Hanson v. Hanson*, 187 Neb. 108, 187 N.W.2d 647 (1971), and *Jones v. Jones*, 183 Neb. 223, 159 N.W.2d 544 (1968), as cases where the Nebraska Supreme Court found the trial court's supervision appropriate. However, *Jones* can be distinguished, because the district court used statutory authority, § 42-364(1), in granting legal custody of the child to a third party (the chief juvenile probation officer) while allowing the parent to retain physical care and custody. Additionally, in *Jones*, there was evidence of the custodial father having intimate relationships with child-care providers; thus, the court could have found a basis to find such an environment detrimental to the child's welfare. And while the *Hanson* court did order the juvenile probation office to supervise the mother's custody, the court denied the father's request to change the custodial arrangements. The *Hanson* court observed that the children had not been exposed to sexual activity or otherwise adversely affected.

■ When litigants seek to use a custodial parent's sexual activity as a basis for a change in custody or custody arrangements, the Nebraska Supreme Court has repeatedly found the overriding factor to be whether the children are directly exposed to sexual activity or whether there is other proof that the children are adversely affected. See, *Smith-Helstrom, supra*; *Kennedy, supra*; and *Krohn, supra*.

In applying *Smith-Helstrom*, *Kennedy*, and *Krohn* to the instant case, it is clear that unless evidence is introduced which demonstrates that Lindsey or Blake were directly exposed to sexual activity or that Lori's intimate relationship with Gardner was proved to adversely affect the children, the limitations on Lori cannot be sustained. In the case before us, Lori testified that the children did not appear to be adversely affected by

Lori's sleeping arrangements with Gardner. In fact, Lori testified that the children seemed excited before visits and that she was discreet in her intimate relationship with Gardner so the children were not exposed to sexual activity. Ricky offers no evidence which demonstrates how the fact that Lori and Gardner discreetly and privately sleep together adversely impacts the children now or will in the future. As far as Ricky's argument that Lori's conduct sends an inappropriate moral message, the law does not embrace that notion as the sole justification for the district court's order. The children obviously observe Lori and Gardner. The potential for various messages from the fact of their relationship, and how they conduct it, obviously exists. The fact that they are unmarried does not automatically connote a bad or immoral message to the children—the message the children receive depends on many factors. However, we can withhold excessive moralizing or comment on the fabric of life and relationships in today's world, because the record does not contain proof of harm, potential or actual, from Lori's relationship with Gardner. Evidence is what is needed before the State intrudes into Lori's life to the extent of the district court's restrictive order.

The district court appears to have based its decision upon the fact that Lori had previously stayed at a motel when visiting Gardner in Sioux City. If anything, this is evidence of Lori's discretion and concern for her children. It is not evidence that the children were adversely affected by Lori's intimate relationship with Gardner. Under *Smith-Helstrom*, *Kennedy*, and *Krohn*, absent evidence the children were adversely affected by Lori's intimate relationship with Gardner, we find that the district court abused its discretion in finding good cause to modify the divorce decree.

In light of our determination that the custodial and visitation limitation was improperly imposed in this case, we find no need to address the issue Lori raises concerning the supersedeas bond. In short, with our reversal, the supersedeas bond issue becomes moot. Each party has filed a motion seeking an award of attorney fees for services in this court. We award Lori an attorney fee taxed to Ricky in the amount of $2,200.

REVERSED.