CAROL MARIE HASSENSTAB, APPELLEE, V.
THOMAS KELLY HASSENSTAB, APPELLANT.

570 N.W.2d 368

Filed September 23, 1997.    No. A-96-571.

Mark J. Milone and John A. Kinney, of Frost, Meyers, Guilfoyle & Govier, for appellant.

Edith T. Peebles and Lisa M. Line, of Brodkey, Cuddigan & Peebles, for appellee.

HANNON, MUES, and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

Thomas Kelly Hassenstab appeals from an order entered by the Douglas County District Court denying his application to modify custody from Carol Marie Hassenstab to him. For the reasons set forth herein, we affirm the order of the district court.

## STATEMENT OF FACTS

Thomas and Carol were married on September 13, 1986. One child was born of this marriage, Jacqueline A. Hassenstab, on March 28, 1986. On May 24, 1990, the Douglas County District Court entered an order dissolving the parties' marriage and awarding custody of Jacqueline to Carol with reasonable rights of visitation to Thomas.

On June 13, 1995, Thomas filed an "Application to Modify Decree of Dissolution of Marriage" requesting, among other things, that the court modify the prior custody determination by awarding custody of Jacqueline to Thomas. Carol filed an answer which generally denied the allegations contained in Thomas' application to modify and also filed a cross-petition requesting an increase in child support and attorney fees.

A trial on the application to modify and Carol's cross-petition was held on March 22, 1996. The evidence adduced at trial established that following the parties' divorce, Carol had been involved in a homosexual relationship. Additionally, Thomas testified to Carol's alleged suicide attempts which he contends occurred prior to and during the marriage. Carol testified that she attempted suicide on one occasion which was 7 years prior to the modification hearing and prior to the time that the dissolution decree became final. In describing the suicide attempt, Carol stated she "fell" out of a car traveling approximately 40 miles per hour. Additionally, the evidence did establish that Carol has sought counseling for several reasons, including her confusion over her sexual identity, but that she was not in counseling at the time of the modification hearing.

The trial judge met with Jacqueline in the court's chambers prior to submission of the case for determination. During the meeting, Jacqueline expressed a desire to remain in her mother's custody.

The district court subsequently entered an order dismissing Thomas' application to modify, modifying the original dissolution decree to increase Thomas' child support obligation, and awarding Carol $1,250 in attorney fees. Thomas timely appealed to this court regarding the dismissal of his application to modify.

## ASSIGNMENTS OF ERROR

On appeal, Thomas contends that the district court erred in finding that no substantial and material change in circumstances had taken place since the entry of the dissolution decree showing that Carol was unfit to retain custody of Jacqueline or that Jacqueline's best interests required a modification of her custody to Thomas. Thomas does not appeal the court's order increasing his child support obligation or the award of attorney fees.

## STANDARD OF REVIEW

■ "The determination as to modification of a dissolution decree is a matter of discretion for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion." *Adrian v. Adrian*, 249 Neb. 53, 56, 541 N.W.2d 388, 390 (1995).

## DISCUSSION

Thomas contends that the district court erred in finding that no substantial and material change in circumstances had taken place since the entry of the dissolution decree that showed that Carol was unfit to retain custody of Jacqueline or that Jacqueline's best interests required a modification of her custody to Thomas.

■ Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the minor child require such action. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996); *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984). The party seeking modification of child custody bears the burden of showing that a material change in circumstances has occurred. *Smith-Helstrom, supra; Krohn, supra.*

■ In determining a child's best interests in custody and visitation matters, Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 1994), provides that the factors to be considered shall include, but not be limited to, the following:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member.

■ Additionally, a court may consider other factors in determining a child's best interests in custody matters, including the moral fitness of the child's parents and the parents' sexual conduct. *Smith-Helstrom, supra*; *Helgenberger v. Helgenberger,* 209 Neb. 184, 306 N.W.2d 867 (1981). However, the best interests of the minor child remain the court's paramount concern in deciding custody issues. *Smith-Helstrom, supra.*

■ First, we address Thomas' contentions that Carol is an unfit mother by reason of her alleged suicide attempts, alcohol consumption, and other psychological difficulties as well as her failure to provide a stable home environment.

> "[I]n cases of this nature, it appears to us that in determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. What we are interested in is the best interests of the child now and in the immediate future, and how the custodial parent is behaving now is therefore of greater significance than past behavior when attempting to determine the best interests of the child."

*Kennedy v. Kennedy*, 221 Neb. 724, 727-28, 380 N.W.2d 300, 303 (1986) (quoting *Riddle v. Riddle*, 221 Neb. 109, 375 N.W.2d 143 (1985)).

The evidence was that a suicide attempt occurred 7 years prior to the modification hearing and prior to the time that the dissolution decree became final in which Carol "fell" out of a car traveling approximately 40 miles per hour. Additionally, the evidence did establish that Carol has sought counseling for several reasons, including her confusion over her sexual identity, but that she was not in counseling at the time of the modification hearing.

18

With regard to Carol's alcohol consumption and throwing loud parties, the record contains no evidence that Jacqueline has ever observed Carol in an intoxicated state or that Carol's alcohol consumption has adversely affected Jacqueline or endangered the child in any way. Furthermore, although Carol and Jacqueline have changed residences approximately four times and Carol has had several different roommates since the divorce decree was entered in 1990, there is no evidence that the change of residences has been harmful to Jacqueline. To the contrary, Carol testified that each move resulted in improved living conditions and that Jacqueline has never had to change schools because of the moves. Thus, based upon the evidence, Thomas has not shown that the above factors were a material change in circumstances requiring a change of custody.

Second, we address Thomas' concerns over the effect that Carol's homosexuality has on Jacqueline. The Nebraska Supreme Court has repeatedly held, albeit not in the context of a homosexual relationship, that a parent's sexual activity is insufficient to establish a material change in circumstances justifying a change in custody absent a showing that the minor child or children were exposed to such activity or were adversely affected or damaged by reason of such activity. *Smith-Helstrom, supra*; *Kennedy, supra*; *Krohn, supra* (where there was no showing that children were exposed to sexual activity or otherwise damaged, mother could retain custody of children). See, also, *Anderson v. Anderson*, 5 Neb. App. 22, 554 N.W.2d 177 (1996). Thus, the issue is whether this rule is to be applied in the context of a homosexual parent.

The South Dakota Supreme Court, in *Van Driel v. Van Driel*, 525 N.W.2d 37 (S.D. 1994), held that a custodial parent's homosexual relationship does not render that parent unfit or require an award of custody to the other parent absent a showing that the custodial parent's conduct has had some harmful effect on the children and that a change of custody is in the child's or children's best interests. We agree that sexual activity by a parent, whether it is heterosexual or homosexual, is governed by the rule that to establish a material change in circumstances justifying a change in custody there must be a showing that the minor child or children were exposed to such activity or

were adversely affected or damaged by reason of such activity and that a change of custody is in the child or children's best interests.

In some cases, courts of other jurisdictions have denied custody and liberal visitation to a homosexual parent. However, these cases involved situations where the children have been exposed to the parent's homosexual activity or where, for other reasons, placing the children in the homosexual parent's custody was not in the children's best interests. For example, in *Hall v Hall*, 95 Mich. App. 614, 615, 291 N.W.2d 143, 144 (1980), the appellate court affirmed the trial court's placement of the minor children with the father rather than with the homosexual mother where the evidence established that, given a conflict, the mother would "unquestionably choose the [homosexual] relationship over the children."

In *In re Marriage of Wiarda*, 505 N.W.2d 506, 508 (Iowa App. 1993), the appellate court affirmed the trial court's grant of custody of the minor child to the father where "[i]t appears from the record that [the mother's] relationship with her [female] friend has not had a calming effect upon either the children or upon the difficult problems of the breakup of this marriage" and "[i]t is certain that [the mother's] friend's presence in this matter has caused twelve-year-old Sarah certain anxieties and, from Sarah's viewpoint, has contributed to the continued breakdown of the relationship between [the mother and father]."

In *Chicoine v. Chicoine*, 479 N.W.2d 891 (S.D. 1992), the appellate court reversed the lower court's grant of liberal visitation to a homosexual mother where the evidence showed that the mother had allowed the minor children to get into bed to sleep with the mother and her lover, sometimes when the mother was not clothed. Further, the evidence established that when one of the children entered the mother's bedroom to find the mother and her lover in an intimate position, the mother did not stop the sexual act to comfort her son. Likewise, in *Wolff v. Wolff*, 349 N.W.2d 656 (S.D. 1984), the appellate court reversed the award of custody of a minor child to the homosexual father where the evidence showed that some homosexual acts had been performed in the presence of the son and that the father

allowed the person involved in those acts to babysit the minor child.

The case at bar is distinguishable from the aforementioned cases because, although there was evidence that Carol and her partner would engage in sexual activity at times when Jacqueline was in Carol's residence and that Jacqueline was generally aware of her mother's homosexual relationship, there was no showing that the daughter was directly exposed to the sexual activity or that she was in any way harmed by the homosexual relationship between Carol and her partner. Because the evidence in the case at bar simply does not establish any harmful effect on Jacqueline because of Carol's homosexual relationship, there has been no showing of a material change of circumstances.

Furthermore, the evidence does not establish that Jacqueline's best interests require a change of custody. At the trial, Jacqueline was described as a happy, self-assured, and confident child. Thomas characterized Jacqueline as "a very loving, fun, special daughter." He further stated that she is "very, very happy, very joyful, very spirited." Other witnesses testified that Jacqueline is dressed in clean clothes which are appropriate for the weather, she is well-kept, and her hair is combed. The record further reflects that Jacqueline is a "B" student and has few discipline problems.

## REQUEST FOR ATTORNEY FEES

Carol has filed a motion requesting that attorney fees be awarded to her for the cost of prosecuting this appeal. The award of attorney fees in a dissolution action involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996); *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996). Considering these factors, an award of attorney fees toward Carol's cost of defending this appeal is warranted. Consequently, Carol's request for attorney fees is granted in the amount of $1,000.

## CONCLUSION

In sum, Thomas has failed to meet his burden of proving a material change of circumstances necessitating a change of Jacqueline's custody. Therefore, the order of the district court is affirmed.

AFFIRMED.

MUES, Judge, concurring.

I write simply to clarify that I have no philosophical disagreement with the general tenor of the dissent and in particular with its conviction that a child's exposure to parental conduct which is at odds with the family moral code impairs that child's moral training, including his or her reactions to sexual yearnings. While I pretend no psychological expertise, common sense and experience suggest that is true. And I believe it to be true whether the conduct in question is an indiscreet heterosexual *or* homosexual extramarital relationship.

If this case had involved Carol's live-in relationship with a male, I expect our decision to affirm would have passed with little note. That decision is certainly consistent with current legal precedent in such matters, whether morally correct or not, and I am reluctant to suggest that a different rule be applied in this instance, particularly on the evidence before us.

Our standard of review is limited to judging the trial court's decision for an abuse of discretion. The evidence presented here, to which that standard must be applied, is that knowledge of her mother's sexual relationship has had no harmful effect on Jacqueline. However difficult my sense of the "common" might make my understanding of the "uncommon," I simply cannot ignore that evidence.

HANNON, Judge, dissenting.

I must respectfully dissent from that portion of the opinion which does not award custody to Thomas.

The record shows that both parties have a healthy and good relationship with their daughter, but Thomas' conduct since the divorce has been more mature and settled than Carol's. This difference alone would not justify modifying the previous custody order. However, the record shows that after the decree in 1990, Carol openly lived in a homosexual relationship and that she

and her lover have discussed homosexual relationships with the child. While Carol testified she no longer engages in lesbian relationships, the record is clear that she continued the relationship for 3 months after Thomas filed the application to modify. It seems to me this case clearly focuses on the question of the effect the establishment of a homosexual relationship by a custodial parent should have upon child custody when that activity is recognized by the people involved as a serious moral wrong.

The majority cites the often-stated rule that the court may consider the moral fitness of the child's parents and the parents' sexual conduct. See *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). In our diverse society, we are often confronted with the question of which moral code to apply. I think courts must apply the moral code to which the parties subscribe. In this case, both parties have outwardly subscribed to the Catholic faith since before they were married, and they are sending Jacqueline to a parochial school. The record establishes that both parties regard the practice of homosexuality as morally wrong.

True, Carol did not engage in sexual activity in front of Jacqueline, but both she and her lover discussed homosexual relationships with the child. If Jacqueline does not now understand her mother's conduct, she certainly will within a few short years. At school and at home, Jacqueline will eventually be taught her mother's conduct was morally wrong.

I am convinced that parents can teach their moral code to their children only by quietly living that code in front of them, not by preaching at them or sending them to be formally instructed in it. With regard to this family's moral code, Carol has obviously set a horrible example. When young people raised with a moral code similar to that which the parties to this action apparently subscribe are confronted with natural sexual yearnings, they are usually fortified by moral education and by their observation of the monogamous, heterosexual relationship of their parents. I am convinced that a child's observation of his or her parent's conduct which is at odds with the family moral code seriously affects the child's reaction to his or her sexual yearnings during the formative years. If a parent commits serious and prolonged moral indiscretions in such a way that his or

her child will learn of them, it is foolish to think the moral education of that child will not be seriously damaged. I think the record shows Carol's conduct will necessarily impair Jacqueline's moral training; therefore, it is in Jacqueline's best interests that custody be modified.