ALAN JOSEPH BOYLE, APPELLANT, V.
MICHELLE MARIE BOYLE, APPELLEE.
684 N.W.2d 49

Filed July 27, 2004.   No. A-02-1384.

Christopher A. Vacanti, of Cohen, Vacanti, Higgins & Shattuck, for appellant.

John F. Eker III for appellee.

Irwin, Chief Judge, and Sievers and Cassel, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Alan Joseph Boyle appeals from an order of the district court which granted Michelle Marie Boyle's application to modify the parties' dissolution decree and which overruled Alan's cross-application to modify the decree. On appeal, Alan challenges the court's conclusion that a provision of the parties' dissolution decree and parenting plan prohibits him from exercising overnight visitation with the parties' minor child while Alan's girl friend is present in the home. Finding no clear error, we affirm.

## II. BACKGROUND

The parties were married on June 3, 1995. One child was born during the marriage, on February 3, 1997. The parties' marriage

was dissolved by a decree entered by the district court on May 14, 2001.

In the dissolution decree, the court awarded Michelle custody of the parties' child. The decree included a parenting plan in which the court awarded visitation rights to Alan, including overnight visitation "each weekend from Saturday at 6:00 p.m. to Sunday at 6:00 p.m." The parenting plan also included a provision that reads as follows:

> When the child is present in their home, Petitioner and Respondent agree to the following:
>
> . . . .
>
> d. Neither parent shall have guests unrelated of the opposite sex stay overnight when the child is present.

The parenting plan, including the above provisions concerning overnight visitation, was entered into by the parties as part of a property settlement agreement approved by the court.

In early October 2001, Alan moved in with his girl friend. On October 17, Michelle filed an application to modify the dissolution decree. Michelle alleged that Alan had moved into his girl friend's home and that the existing visitation schedule was presenting difficulties for Michelle's wishes to involve the parties' minor child in various religious activities which overlapped with Alan's visitation schedule. On March 7, 2002, Alan filed an answer in which he admitted to moving into his girl friend's home in October 2001, but affirmatively alleged that his cohabitation did not violate the terms of the parenting plan. On August 1, 2002, Alan filed a cross-application for modification of the dissolution decree, alleging that the intent of the parenting plan provision was not to prohibit cohabitation in a meaningful relationship.

On November 5, 2002, the district court entered an order modifying the dissolution decree. The vast majority of the parties' disputed issues were resolved by the parties in a stipulation presented to the court at the beginning of the hearing on the applications to modify. Relevant to this appeal, the court specifically ordered that the provision of the decree prohibiting overnight guests of the opposite sex when the minor child is present should continue in effect. In findings made at the end of the hearing, the court indicated it was interpreting the provision

to mean that "the child's not supposed to be present when there's a member of the opposite sex there overnight." This appeal followed.

## III. ASSIGNMENTS OF ERROR

Alan has assigned four errors on appeal. All four assignments of error concern Alan's assertion that the lower court erred in interpreting the provision of the decree prohibiting overnight guests of the opposite sex when the minor child is present to include Alan's cohabitation with his girl friend. Alan asserts that the district court erred in so finding and in finding that he failed to demonstrate a material change of circumstances which justified removing the provision from the decree.

## IV. ANALYSIS

### 1. OVERNIGHT GUEST PROVISION

Alan's assignments of error on appeal can all be read to challenge the district court's conclusion that the provision of the decree prohibiting overnight guests of the opposite sex when the minor child is present should continue in effect and that the provision should be interpreted to mean that "the child's not supposed to be present when there's a member of the opposite sex there overnight." Alan argues that the provision should not be interpreted to prohibit cohabitation, but, rather, only to prohibit "casual" relationships and "one night stands." We do not agree.

### (a) Ambiguity in Decree Language

The record reveals that at the time of the decree, the parties agreed on the language used in the provision, and that the court incorporated the language into the decree by adopting the parenting plan as part of the decree. See Neb. Rev. Stat. §§ 43-2903(3), 43-2915(4), and 43-2917 (Reissue 1998). Neither party perfected an appeal from the dissolution decree, and as a result, the decree became final. The current action was brought as a modification proceeding, during which the parties presented testimony and argument concerning what they thought the disputed language was intended to prohibit.

This testimony and argument was appropriate only if the disputed provision of the decree is considered ambiguous. In the

context of interpretation of an unambiguous decree, the Nebraska Supreme Court has held:

> "[T]he fact is that neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant."

*Metropolitan Life Ins. Co. v. Beaty*, 242 Neb. 169, 173, 493 N.W.2d 627, 630 (1993), quoting *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986). If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree. See *Metropolitan Life Ins. Co. v. Beaty, supra*. See, also, *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979).

As such, we conclude that the first issue presented on this appeal is whether the disputed provision of the decree is ambiguous. General principles governing ambiguity of documents are applicable and govern issues concerning ambiguity of court decrees. See, *Metropolitan Life Ins. Co. v. Beaty, supra*; *Neujahr v. Neujahr, supra*; *Bokelman v. Bokelman, supra*. Whether a document is ambiguous is a question of law initially determined by a trial court. *Metropolitan Life Ins. Co. v. Beaty, supra*. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Id*. Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Id*.

In the instant case, the trial court did not make a specific finding of ambiguity. Implicit in the court's "interpretation" of the disputed provision, based on the testimony and argument presented concerning the parties' respective beliefs about what was intended when the provision was originally drafted and included in the parenting plan, however, is a conclusion that the disputed provision is ambiguous. See *Dammann v. Litty*, 234 Neb. 664,

452 N.W.2d 522 (1990) (finding of ambiguity implicit in trial court's decision).

We reach the same conclusion in our review of the matter because we conclude that the term "guests" in the provision at issue is susceptible of at least two reasonable but conflicting interpretations or meanings. The disputed provision says only that "[n]either parent shall have guests unrelated of the opposite sex stay overnight when the child is present." There is no definition of the term "guests" provided anywhere in the parenting plan or the decree, and in the context of the present case, we find that both parties' conflicting interpretations or meanings are reasonable.

First, we do not find it unreasonable to interpret the provision in a narrow fashion that would not prohibit cohabitation, as urged by Alan. It is not entirely unreasonable to read the provision such that the term "guests" does not include an unrelated member of the opposite sex who is in a committed relationship with either party and is sharing a residence with the party; in such a situation, it is not unreasonable to conclude that the unrelated member of the opposite sex is not a guest in their own shared residence, as Alan argues on appeal.

However, we also conclude that it cannot be unreasonable to read the provision in a broader fashion to mean that neither party is to have a member of the opposite sex stay overnight, whether in a cohabitation setting or a more "casual" setting, to use the term suggested by Alan. To say the only reasonable interpretation of the provision is a literal and narrow reading of the term "guest" as that term would be defined in the dictionary would suggest, among other conclusions, that either party could take the child to the residence of any unrelated member of the opposite sex and stay overnight, whether that person was part of a committed relationship or a "casual" one night stand. In that situation, the member of the opposite sex would not literally be a "guest" in his or her own residence, as argued by Alan, and the provision would not prohibit such conduct. Therefore, we find it reasonable to interpret the provision in a broader fashion to prohibit the parent from having any unrelated member of the opposite sex present overnight when the child is present.

We note that the question of whether a prohibition of overnight "guests" also prohibits cohabitation does not appear to have been

directly addressed by the appellate courts of Nebraska. Other jurisdictions, however, have reached conclusions which further suggest that a broader interpretation of the term "guest" is reasonable and appropriate. For example, in *Shipman v. Shipman*, 357 N.C. 471, 477, 586 S.E.2d 250, 255 (2003), there was a consent order entered which "forbade either party from having 'non-familial overnight guests of the opposite sex in the presence of the minor child.' " The record indicated that the father "lived with his girlfriend" during the period of time at issue in the case. *Id.* The record further indicated, however, that the minor child did not spend the night in the father's home with the girl friend present overnight. As such, the court concluded that the father did not violate the provisions of the consent order. The court specifically found that the cohabitation did not violate the consent order, but the only basis for the court's finding in that regard was the fact that the child did not spend the night with the girl friend in the home, not because "cohabitation" could not reasonably be prohibited by the "overnight guests" language of the consent order. *Id.* The court's conclusion suggests that cohabitation could, in fact, be considered a violation of the "guest" provision.

In *Campbell v. Campbell*, 336 Ark. 379, 381, 985 S.W.2d 724, 725 (1999), the dissolution court entered an order awarding custody to the father and granting visitation to the mother. The court's order prohibited both parties "from having guests of the opposite sex overnight when the children were present." The evidence indicated that both parties had violated the terms of the agreement and had, at times, had overnight guests of the opposite sex. In discussing the parties' violations of the court order, the appellate court specifically applied principles of law concerning "non-cohabitation order[s]." *Id.* at 389, 985 S.W.2d at 730. The court's use of such principles suggests that at the very least, agreements which explicitly prohibit only "guests," and do not explicitly prohibit cohabitation, can be read broadly enough to be governed by law dealing with cohabitation.

Although we do not find unreasonable Alan's interpretation that the term "guests" should be construed narrowly to not prohibit cohabitation, we also do not find unreasonable Michelle's interpretation that the term "guests" should be construed more broadly to prohibit more than just literal "guests" in Alan's

home. Because we find that both parties' interpretations, while conflicting, are reasonable, we conclude that the disputed provision is ambiguous.

### (b) Interjpretation of Decree's Language

■ Having concluded that the disputed provision of the decree is ambiguous, we must next review the trial court's interpretation of the provision. In other situations, the Nebraska Supreme Court has held that when a document is ambiguous, the meaning of the document is a question of fact and the trier of fact determines the intent of the parties from all the facts and circumstances. See, *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993); *Gables CVF v. Bahr, Vermeer & Haecker Architect*, 244 Neb. 346, 506 N.W.2d 706 (1993); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990). See, also, *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990). The trier of fact's determination in this regard will be upheld on appeal unless clearly erroneous. See *Hensman v. Parsons, supra.*

There is no authority in Nebraska which would suggest that an appellate court, in circumstances such as this where the appellate court is affirming a trial court's conclusion that an earlier decree is ambiguous, is free to interpret the language of the decree as a question of law independent of the trial court's decision. For example, in *Neujahr v. Neujahr*, 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986), the Supreme Court dealt with a trial court's attempt to interpret the language of a prior decree and indicated that "[w]hat the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant." In *Neujahr*, however, the Supreme Court clearly implied that the decree at issue was not an ambiguous decree, but, rather, an unambiguous decree. Although the court noted in dictum that in "instances when a decree *is* ambiguous," the court may be called upon to resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears, the Supreme Court did not indicate how an appellate court would subsequently review that resolution. (Emphasis supplied.) *Id.* at 728, 393 N.W.2d at 51.

In light of the Nebraska Supreme Court's clear holdings that when a document is found to be ambiguous, the meaning of the

document is a question of fact and subject to a clearly erroneous standard of review, it seems more appropriate to follow this more explicit guidance rather than the unclear implications of dicta. This seems especially appropriate where, as in the present case, the ambiguous language of the decree was not crafted by the trial court in the first instance, but, rather, was adopted by the trial court as agreed to by the parties in a contractual parenting plan.

Despite Alan's arguments to the contrary concerning the "plain and ordinary meaning" of the term "guests," we do not find clearly erroneous the district court's conclusion that the language be read to prohibit cohabitation as well as "one night stands." As noted above, such an interpretation is entirely reasonable, and the district court's conclusion that the provision should be so interpreted is supported by Michelle's testimony. Further, as also noted above, adopting Alan's argument and accepting a literal dictionary definition of the term "guest" as the only reasonable interpretation would also result in the seemingly unreasonable conclusion that even "casual" relationships or "one night stands" would be permissible while exercising overnight visitation so long as the overnight visitation occurred at the residence of the unrelated member of the opposite sex, where he or she could not be considered a "guest." As such, we do not find clearly erroneous the district court's conclusion that Michelle's interpretation of the provision is the more reasonable one.

### (c) Loss of Visitation Time

Alan also argues that the court's interpretation of the provision results in him "losing" the equivalent of "more than 44 days" of visitation during the course of a year. (Emphasis omitted.) Brief for appellant at 22. We disagree. As noted, the language of the provision was agreed to by Alan and was included in the decree with his knowledge and agreement, and no appeal was taken from the decree. Nonetheless, Alan voluntarily chose to move in with his girl friend less than 5 months later. It is Alan's decision to share a residence with an unrelated member of the opposite sex, which decision has placed into question his overnight visitation with the child. Further, the court's order in this case does not prevent Alan from exercising

overnight visitation; it only provides that such overnight visitation cannot occur if Alan's girl friend is at the residence on that particular night.

### (d) Sexual Behavior and Adverse Impact

Finally, we disagree with Alan's interpretation of Nebraska law concerning the need for Michelle to demonstrate an adverse impact on the child to prohibit Alan's cohabitation with his girl friend. Alan cites a number of cases discussing the fact that one parent having overnight guests of the opposite sex is not necessarily contrary to the best interests of the child in the absence of a demonstration of an adverse impact on the child. See, *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996); *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986); *Anderson v. Anderson*, 5 Neb. App. 22, 554 N.W.2d 177 (1996). Similarly, the dissent emphasizes this same authority and characterizes "the matter really at issue" as "the sexual activities of divorced parents when their children are nearby." The present case differs significantly from the cited cases, however, because the provision prohibiting overnight guests of the opposite sex and, according to the district court's reasonable interpretation, prohibiting Alan's cohabitation with his girl friend was included in the decree with the consent of the parties. In the cited cases, the question was raised without a specific provision of the decree to be considered, especially a provision agreed to by the parties. In addition, in the cited cases, the issue was usually whether there should be a change in custody or custodial arrangements; in such a situation, an adverse impact may be required. In the present case, however, the court declined to modify the custodial arrangement on this issue.

The cited cases may, as the dissent suggests, support a conclusion that the public policy of this state with regard to the parties' sexual behavior after divorce where children are concerned is that the court should not impose a morality-based restriction on such behavior. But the cited cases are inapplicable to a case such as the present one, where the language at issue, and its ultimate impact, was not imposed by the court but by the parties themselves. In such a situation, there is simply no basis for requiring Michelle to demonstrate that Alan's behavior had an adverse impact on the

minor child, because Alan's behavior was prohibited by the provision which Alan agreed to and which the court adopted at the request of the parties.

## 2. Resolution

With respect to Michelle's application to modify, the specific items which were actually modified are not at issue on this appeal. With respect to Michelle's objection to Alan's exercise of overnight visitation when his girl friend is present in the residence, the court actually did not modify the decree, but, rather, held that the provision would continue in effect as set forth in the decree. With respect to Alan's cross-application to modify, the court found that Alan failed to demonstrate a material change of circumstances which justified modifying the decree. In light of our discussion above, we find that the disputed provision is ambiguous and we find no clear error by the district court in its interpretation of the provision at issue. Accordingly, we disagree with Alan's assertion on appeal that Michelle's "misinterpretation" of the provision should be considered a material change of circumstances. Brief for appellant at 12. As such, we affirm the order of the district court.

## V. CONCLUSION

We find no clear error by the district court. The district court's order is affirmed.

AFFIRMED.

CASSEL, Judge, concurring.

I agree with the majority's opinion in every respect save one. In my opinion, interpretation of an ambiguous *judgment,* as contrasted with an ambiguous contract or other document, presents a question of law to be determined on review of the entire record independently of the trial court's decision. In *Neujahr v. Neujahr,* 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986), the court stated that when faced with an ambiguous decree, in an appropriate action brought by the parties, the trial court should "resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears." I believe that if one accepts the Supreme Court's dictum in *Neujahr,* it follows that an appellate court would review the trial court's decision as it would any other question of

law, i.e., independently. See, e.g., *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004) (on question of law, appellate court is obligated to reach conclusion independent of determination reached by court below). Based upon the same authorities relied on in the majority's opinion, I would reach the same interpretation but I would do so independently as a matter of law and without deference to the trial court's decision. To that extent, I concur.

SIEVERS, Judge, dissenting.

With all due respect, I find I must dissent from the majority's opinion. Given that the majority's opinion contains the necessary background, we can get to the point that the key word under discussion is "guests" and the key question is whether that word is ambiguous. The standard, as the majority says, is whether there are two reasonable but conflicting interpretations of the word "guests." I submit that the majority manufactures an ambiguity by engaging in a discussion about guest status, cohabitation, "one night stands," and the location where such things occur. But the applicable law requires that we first look to the "four corners of the decree," *Neujahr v. Neujahr*, 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986), and initially focus on the word "guests," putting aside these other matters. The notion that we first look to see if the word or words in question have a common and ordinarily understood meaning is so prevalent in our law that no citation of authority is needed. This concept has been used in examining the meanings of insurance policies, deeds, contracts, wills, and court decrees. Here, we are examining a court-approved agreement which may properly be viewed as a contract between Michelle and Alan.

Black's Law Dictionary 714 (7th ed. 1999) defines "guest" as "1. A person who is entertained or to whom hospitality is extended. 2. A person who pays for service at an establishment, esp[ecially] a hotel or restaurant. 3. A nonpaying passenger in a motor vehicle." Webster's Encyclopedic Unabridged Dictionary of the English Language 628 (1989) defines "guest" as

> 1. a person who spends some time at another person's home in some social activity, as a visit, dinner, or party. 2. one who receives the hospitality of a club, a city, or the like. 3. a person who patronizes a hotel, restaurant, etc., for the lodging, food, or entertainment it provides.

Obviously, there is a commonly understood definition, given the similarity between the law dictionary and the ordinary dictionary. The hallmarks of a "guest" involve spending a limited time at a location for socialization or hospitality.

The parties agreed that "[n]either parent shall have *guests* unrelated of the opposite sex stay overnight when the child is present." (Emphasis supplied.) The majority correctly notes that we should ignore the intentions and thoughts of the parties, as well as those of the trial court which approved the parties' agreement, unless there is an ambiguity—which, as the majority notes, is not established by the fact that the parties have or suggest opposing interpretations. The majority then unfortunately jumps the track, so to speak, by finding an ambiguity, because it says that there is "no definition of the term 'guests' " in the agreement and that "both parties' conflicting interpretations or meanings are reasonable." However, a term with a commonly understood meaning needs no definition, because by its very nature, reasonable people know what it means—unless by agreement the parties write that it means something else. Thus, the two predicates by which the majority finds the term "guests" to be ambiguous are flawed, because under the majority's premise, every word in an agreement is ambiguous, unless defined. Additionally, the dictionaries show that the parties' self-serving interpretations are not necessarily reasonable.

The majority then discusses liberal or restrictive readings of the clause, and the majority brings the parties' self-serving testimony about their intentions into the discussion. Additionally, the majority discusses whether a prohibition against guests also prohibits cohabitation. This is done without looking to whether the term "cohabit" has a common ordinary meaning which in itself distinguishes such arrangement from that of being an overnight "guest."

Because the majority buys into Michelle's notion, as well as the trial court's notion, that the prohibition against overnight "guests" of the opposite sex can be reasonably construed to exclude "cohabitation," we should at least look to the same two dictionaries for a common and ordinary meaning of the term "cohabitation" and then contrast it with the term "guests." Black's Law Dictionary, *supra* at 254, defines "cohabitation" as

"[t]he fact or state of living together, esp[ecially] as partners in life, usu[ally] with the suggestion of sexual relations." Webster's Encyclopedic Unabridged Dictionary of the English Language, *supra* at 287, defines "cohabit" as "to live together as man and wife, usually without legal or religious sanction." It seems apparent, at least to me, that "guest" and "cohabitation" both have common, accepted, and ordinary definitions which are as different as night and day. Therefore, it follows that the parties' agreement that "[n]either parent shall have guests unrelated of the opposite sex stay overnight when the child is present" simply does not apply to or restrict Alan's overnight visitation because of his cohabitation arrangement with his girl friend.

Thus, the district court's interpretation of the provision to mean that "the child's not supposed to be present when there's a member of the opposite sex there overnight" is patently wrong under the applicable law, since it is a completely unwarranted extension and expansion of the parties' agreement. The parties' limited agreement prohibited, by its simple and straightforward terms, visitation when there were overnight guests of the opposite sex, but the agreement said nothing about visitation when one of the divorced parents was in a cohabitation relationship.

Even if I could somehow agree that this clause must be construed, I fail to understand why the majority says there is no clear error in the district court's restrictive construction which clearly runs counter to the pronouncements of this court and the Supreme Court about the matter really at issue—the sexual activities of divorced parents when their children are nearby. Both courts have said, and I summarize generally, that the sex life of divorced parties is not a concern of the courts absent evidence of indiscretion, evidence of inappropriate behavior, or evidence that such is harmful to the children. See *Anderson v. Anderson*, 5 Neb. App. 22, 554 N.W.2d 177 (1996) (when litigants seek to use custodial parent's sexual activity as basis for change in custody or custody arrangements, Nebraska Supreme Court has repeatedly found overriding factor to be whether children are directly exposed to sexual activity or whether there is other proof that children are being adversely affected). See, also, *Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986) (mother's violation of anti-cohabitation provision of decree was not given much

weight by Supreme Court absent evidence that cohabitation adversely affected her son); *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984). Surely our view of this matter does not change for visitation cases.

There is no evidence of any such harm in this record. Yet, the majority affirms Michelle's highly restrictive interpretation of this clause, which runs counter to the public policy of this state with regard to sex after divorce when children are concerned. I return to what this court wrote in *Anderson v. Anderson, supra.* In many instances, the legal relationship of the man and woman spending time together with the children of one party is not nearly so important as is the behavior of the man and woman in what they model about respect, trust, love, and caring for one another. While I understand that there still exists a societal view that an unmarried man and woman should not live together, the reality is that they frequently do. The simple fact is that if Michelle wanted the agreement to produce the restrictive effect she now advances, the agreement should have said, "If a parent cohabits with a member of the opposite sex, there shall be no overnight visitation by the cohabitating parent when the child of the parent in cohabitation is present." This language would do the trick and is simple and concise. But it is not in the agreement, and this court should avoid appellate gymnastics to write into the agreement that which was never there.

What the majority has done in this case is manufacture an ambiguity where none exists, examine the "intent" of the parties, and affirm the trial court's choice of Michelle's view, which view is counter to the public policy expressed by the appellate courts of this state on the matter of sexual relationships of parents after divorce. In the final analysis, the majority creates a prohibition against overnight visitation if a parent is in a cohabitation relationship, when the agreement never even mentioned any prohibition against overnight visitation by a cohabitating parent. The parties prohibited overnight guests while the children were present, and I, for one, have no trouble understanding what their words meant. Because the word "guests" is unambiguous, the parties' intention in using that word is simply not relevant. A guest is a guest, and a cohabitant is a cohabitant—and they are remarkably different. A guest is a temporary visitor for social purposes

(which could include sex), and a cohabitant is one who lives in a semipermanent arrangement (which surely involves sex) that looks like a marriage. I would reverse and vacate the district court's interpretation of the clause, finding that Alan's cohabitation with his girl friend does not affect his visitation rights.