CHARLES A. MCDOUGALL, APPELLEE, V. PAULA L. MCDOUGALL, APPELLANT.

464 N.W.2d 189

Filed January 4, 1991.    No. 90-204.

Carole McMahon-Boies, of Pepperl & McMahon-Boies Law Offices, P.C., for appellant.

Hal W. Anderson, of Berry, Anderson, Creager & Wittstruck, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The trial judge, upon application of the 32-year-old father, appellee Charles A. McDougall, modified the joint custody originally decreed as part of the dissolution of the parties' marriage by awarding sole custody of their 6- and 3½-year-old sons to the father, thereby implicitly dismissing the counter-application of the 27-year-old mother, appellant Paula L. McDougall, for sole custody. The modification order also terminated the father's prior responsibility to pay $450 per month in child support and ordered the mother to pay $260 per month in child support. The mother was granted reasonable rights of visitation, including those specified in an exhibit said to be attached to the order but which is not part of the transcript.

The mother, in a brief which generates more heat than light and which, contrary to the requirements of Neb. Ct. R. of Prac. 9D(1)f (rev. 1989), makes few references to the record, claims that the trial judge erred in (1) finding that there has been a change of circumstances, (2) placing custody with the father, and (3) finding the amount of the father's income.

The first assignment of error is easily seen to be without merit. The joint custody arrangement was decreed based upon the agreement of the parties. Both now concede that joint custody is not working, and the mother herself says that the arrangement is unsettling to the boys, for which reason she seeks sole custody. A material change in circumstances means that something has occurred which, had the dissolution court known of it at the time of the initial decree, would have persuaded it to decree differently. *Huffman v. Huffman, ante*

p. 101, 459 N.W.2d 215 (1990).

The relationship between the parties is perhaps best illustrated by the fact that the father asked one of his acquaintances, who worked at a bar, on at least one occasion when the children were present, to try to get the mother into trouble by calling the police when she had enough to drink so that she would get arrested and to spread the rumor that she had a venereal disease. According to the mother, she did contract a venereal disease before her marriage at a time when she was only with the father.

There can be no reasonable doubt but that if the dissolution court had known the parents could not cooperate sufficiently to make the joint custody arrangement work to the best interests of the children, it would have granted sole custody to one parent or the other.

The second summarized assignment of error is more complex. The parties met in 1979 at an alcohol treatment center at a time when the mother was 15 years of age. According to her, she had admitted herself on a voluntary basis "to meet [her] emotional needs." The father was there because he had been convicted of driving while intoxicated.

The parties have continued to drink. The mother likes to dance and goes to bars where, she says, she drinks on occasion, having a couple of beers and then switching to soft drinks or water. However, a police officer who had been called to the parties' home by the mother after a disagreement with the father testified that on that occasion the mother appeared slightly intoxicated.

According to the mother, the father drinks frequently to the point that he stumbles when he walks. Indeed, he was required, as part of his reemployment by Burlington Northern after a layoff, to attend Alcoholics Anonymous meetings and did not drink during that 6-week or so period. The mother says he started drinking again the next week.

The father admits that he drinks, but states he does not get intoxicated. According to the mother, he has smelled of alcohol when picking up the boys. She described one occasion when the younger boy was having some tubes inserted in his ears at a hospital that the father arrived late and smelled of alcohol. The

father denies being late or having been drinking. However, in October 1989 he did run his pickup truck into a pole after he had been drinking. Although he was then in arrears in his child support obligation, he nonetheless purchased a new truck by using $15,000 in insurance proceeds and borrowing an additional $2,700.

The father admits that he has used marijuana in the past and indeed tested positive in September or October 1987. The mother first became aware of his use in October 1987 when the father left his wallet at home and she found some smoking papers in it. The father admits that the mother found some marijuana prior to August 1988 in a drawer he used at home. He explained that he got it from a friend to share with the mother in celebration of her birthday, had she wished. The mother denies using any marijuana since the birth of her children.

Both parties believe in corporal punishment. While the mother claimed at trial that she never, with a "full swing," hit any child in the face, in a prior deposition taken June 13, 1989, she admitted that she slapped the older boy in the face at least five times and on occasion left red marks on his face. At trial, she said the red mark on the boy's face was the result of accidentally striking him with a toy while she was picking it up. She also testified at that same deposition that while she no longer uses "sticks or devices" in disciplining, she had in the past. While she denied at trial that she yelled or screamed at the children, claiming instead to address them in an "authoritive [sic] voice," she, in the same deposition, admitted to occasionally yelling and screaming at her children. At another deposition, taken August 16, 1988, she admitted occasionally losing control while yelling and screaming at the children. She has taken some parenting classes and has had some counseling concerning disciplining methods. One witness testified seeing a handprint on the younger boy's buttocks.

The father cut some tendons and nerves in his left hand in December 1987 and as a result did not work from March to August 1989 and then from October 1989 through the day of trial, January 29, 1990, and thus was free to take physical care of his children. He received $696 per month in sick benefits.

The father filed his application but 7 months after entry of the decree. This was shortly after the mother had left the children with him for a longer period than was customary, which she did in order to save some child-care costs and because the father had volunteered to take care of them longer, being, as noted earlier, behind in his child support payments. The mother had lost her day job and had taken night employment until she again obtained day employment.

According to the mother, the children seem withdrawn when taken to stay with their father. Others, however, testified that the children interact well with both parents and with each other. The mother lives with the children's maternal grandmother, and both women work. The mother had placed the older boy in a preschool program, which he attended 3 days a week at the church she and the boys attend and for which placement the mother paid. She also paid some medical bills which the father had not paid as obligated.

The trial judge recited in his order that he did not believe the mother, pointing specifically to the variance between her trial and deposition testimony concerning her method of disciplining the children. He also noted that this was not the only "glaring inconsistency" in her testimony, but he stated that he was not discounting her testimony entirely.

The rules applicable to the resolution of this summarized assignment of error are well known. Neb. Rev. Stat. § 42-364 (Reissue 1988) states that custody shall be determined on the basis of the best interests of the children, an inquiry which includes, but is not limited to, a consideration of the relationship of the children to each parent and the general health, welfare, and social behavior of the children. We have said that we also look to the moral fitness of the parents, including their sexual conduct; the respective environments each offers; the emotional relationship between the child and the parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the capacity of each parent to provide physical care and to satisfy the needs of the child. *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990), quoting *Christen*

*v. Christen*, 228 Neb. 268, 422 N.W.2d 92 (1988). These determinations are entrusted to the discretion of the trial judge and, generally, absent an abuse thereof, will be upheld on our de novo review of the record. *Pournazari v. Pournazari, ante* p. 260, 460 N.W.2d 661 (1990); *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990). Moreover, where the evidence is in conflict, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990).

We share the trial judge's obvious concern with the manner in which the children have been disciplined, but must bear in mind that both parents believe in the use of corporal punishment. Although the mother's testimony as to her method of punishment is, as the trial judge properly noted, not consistent, and her testimony that she resorts to the use of her authoritative voice strikes us as a notion implanted in her mind by some outside source, the fact of the matter is that the record does not demonstrate the children have been physically injured. Without a description of those other factors which led the trial judge to find as he did, we, on de novo review, cannot come to the conclusion that he did not abuse his discretion in awarding custody to the father.

Although neither parent can be described as unfit in a legal sense, neither can they be described as ideal parents. Nonetheless, the record portrays to us a mother who has striven to do the best she knew how to care and provide for her children and a father who took advantage of circumstances in order to first ignore and later minimize his financial obligation to his children. We find merit in the second assignment of error and conclude that the judgment below must be reversed and sole custody of the children placed in the mother.

In view of the foregoing, the third assignment of error need not be addressed, for there must be further proceedings consistent with this opinion, at which time the trial judge will consider and adjudicate the matters of child support and visitation in light of the circumstances then prevailing.

REVERSED AND REMANDED WITH DIRECTION.