IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

COVINGTON V. RIGGLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BENJAMIN W. COVINGTON, APPELLEE,
V.
KRISTEENA E. RIGGLE, NOW KNOWN AS KRISTEENA E. BRITTAIN, APPELLANT.

Filed July 16, 2013.    No. A-12-657.

Appeal from the District Court for Lincoln County: DONALD E. ROWLANDS, Judge. Affirmed.

James C. Bocott, of Law Office of James C. Bocott, P.C., L.L.O., for appellant.

R. Bradley Dawson, of Lindemeier, Gillett & Dawson, for appellee.

INBODY, Chief Judge, and IRWIN, Judge.

INBODY, Chief Judge.

INTRODUCTION

Kristeena E. Riggle, now known as Kristeena E. Brittain (Brittain), appeals the denial of her complaint to modify custody of the minor child, Cortney Ann Covington.

PROCEDURAL BACKGROUND

In December 2003, Brittain gave birth to Cortney. On July 20, 2005, Benjamin W. Covington commenced an action to determine Cortney's paternity, and on that same date, he received ex parte temporary custody of Cortney. In August 2005, the district court took legal custody of Cortney and gave each party shared physical possession of Cortney, alternating every other week. In February 2007, the district court granted temporary custody of the minor child to Covington pending trial, which was held in August 2007.

On August 14, 2007, the district court entered an order retaining legal custody of Cortney and placing physical custody of Cortney with Covington. The court stated that "[i]n reaching the placement decision . . . , the Court has considered and given substantial weight to the report of

- 1 -

the *guardian ad litem* (See Exhibit 1)." (Emphasis in original.) The district court specifically noted that it was accepting the guardian ad litem's opinion that Covington provided greater stability for Cortney than Brittain, although the court noted that it had concerns about the stability and fitness of both parents.

After the passage of several years, in July 2011, Brittain filed a complaint to modify custody, and trial thereon was held on May 9 and 10, 2012. At the time of the previous trial in August 2007, Covington had been employed at a Walmart distribution center earning $17 per hour with health insurance benefits. At the time of his dismissal from that employment in 2008, he was earning $19.60 per hour. During the intervening years until 2012, Covington had at least eight employers (Fat Dog, North Platte Telegraph, Antelope Sprinklers, Red Arrow Truck Wash, Nebraska Department of Roads, North Platte Public Schools, Time Tool, and Ag & Auto Diesel), but at the time of the current trial, Covington had been employed with Pepsi for 2 months and was earning $10.50 per hour, working from 11 a.m. to 6 p.m., Monday through Friday. He testified that his current job situation is better than it was in August 2007, because he knows exactly when he is working, he has better benefits, and eventually, he will get his commercial driver's license through his employment with Pepsi. During his work hours, Covington's mother assists him by picking Cortney up from school and caring for her until Covington gets off work.

Covington testified that he and Cortney have lived in a two-bedroom house in North Platte, Nebraska, for the past 1½ years prior to trial. At the time of the trial, he was 35 years old and had never been married; he has primarily been a single parent and the sole support for Cortney. Covington testified that he takes care of Cortney's everyday needs: meals, taking her to school, and homework if she has not already completed it. He attends her parent-teacher conferences, school programs, and takes her to counseling sessions. They also do fun things like ride four-wheelers together, go swimming, and go to the recreation center to play basketball and volleyball. Covington testified that Cortney has friends in her neighborhood and that he intended to sign her up for gymnastics, since she expressed an interest in it, along with soccer and swimming lessons.

Brittain has been married to her husband since April 2006. Brittain testified that at the time of the previous trial in 2007, she was newly married and pregnant and her family was struggling financially, but that at the time of trial in 2012, her family's financial situation was more secure. The family moved to McCook, Nebraska, for Brittain's husband to take a better job as a mechanic earning approximately $50,000 to $55,000 annually. They have rented a three-bedroom home in McCook for the past 16 months. The family's more secure financial situation allows Brittain to be a stay-at-home mother, so she is available for the parties' children, five of whom reside with them. Brittain and her husband have two biological children, ages 5 and 3. Brittain has another daughter, age 10, who has been adopted by her husband. Also residing with them are Brittain's husband's daughter and son from a prior relationship, age 17 and age 16, respectively. Cortney gets along with her siblings, and Brittain's husband testified that when Cortney visits, she has fun playing and is smiling and laughing. Cortney shares a room with her three sisters at Brittain's home, and Brittain believes that sharing a room teaches children to respect each other's property and space, to cooperate, to share, and to communicate.

Despite the positive steps that each of the parties have taken since the last trial was held in August 2007, both Covington and Brittain have experienced some bumps in the road. In 2009

and 2010, Covington cohabitated with a woman and her four children for approximately 1 year. This relationship did not end on good terms, and during an argument at the children's school in January 2011, Covington punched out the back window of the woman's automobile while the children were in the car. The woman obtained a restraining order against him. As a result of the incident, Covington was charged with stalking, but he pled to disturbing the peace, and he also pled to criminal mischief and paid a fine and restitution.

Additionally, Covington's driver's license has been suspended on four occasions since 2007. Covington also pled guilty to no operator's license on his person in 2008 and 2009. Covington has moved residences at least four times and has had eviction actions commenced against him twice since 2007. Covington testified that he was never forced to leave a residence for failure to pay rent and that he always paid his rent, most of his payments were on time, and if he could not pay on time, he talked to his landlord. During years such as 2009, 2010, and 2011, when Covington earned $3,111, $11,545, and $13,817, respectively, friends and family provided assistance in helping him support Cortney.

Brittain herself has lived in seven residences since August 2007. She is obligated to pay $50 per month in child support, she has been delinquent on a number of occasions, her driver's license had been suspended for nonpayment of child support, and at the time of trial, she was $150.41 in arrears. Brittain did not attend either of Cortney's second grade parent-teacher conferences and had never contacted Cortney's second grade teacher to inquire how Cortney was doing in school.

There was also favorable testimony regarding each party as a parent and about Cortney. Ashley Steffes, Cortney's second grade teacher, testified that Cortney is doing "[v]ery well" in school, that her grades are "very good," and that she is a "great student." Steffes' personal observation of Cortney is that she is well-adjusted, a hard worker, and a goal setter and that she is a positive role model for other students in the classroom who might be struggling with their own personal issues. Covington has attended the two parent-teacher conferences, is attentive, and has appeared interested in Cortney's progress.

Kris Steinbeck, a mental health therapist, testified that she began seeing Cortney in May 2010. The chief complaints identified at the time Cortney began seeing Steinbeck were adjustment problems due to the separation of her parents, her new family situation, and nightmares and moodiness. Steinbeck diagnosed Cortney with having adjustment disorder with anxiety at that time which was caused by the family conflict, the disruption of the family by the separation of her parents, and Brittain's marriage. Steinbeck noted that Cortney's paternal grandmother provided care and support for her and tended to be overprotective, but that this support was a good thing for Cortney because it was consistent and gave Cortney a foundation. Steinbeck has continued counseling with Cortney up until the time of trial, with breaks in treatment, and she stated that Cortney's condition has improved significantly. Steinbeck has been able to discern that Cortney is comfortable in both of her parents' households and that Cortney has conflict with her siblings at Brittain's home, which is very normal. Some self-esteem issues have surfaced with Cortney that Steinbeck and Cortney are addressing. Steinbeck also addressed some social skills with Cortney after Cortney experienced some anxiety after being bullied by another girl at her school. Covington has been participating in counseling sessions and has been

focused on making things stable and consistent for Cortney, and he testified that the school did address the bullying issue and that the matter was resolved.

According to Steinbeck, Covington does a good job of parenting Cortney, he is an appropriate parent, there are not any problems with his parenting abilities, he is doing the best that he can, and he is doing a good job. Covington has presented concerns and has been open to suggestions and redirection. However, Steinbeck noted that she had not conducted any custody evaluations and could not express an opinion on who was a better parent because she only had Brittain in session on three occasions.

Brittain's mother testified that Cortney and Brittain have a "very wonderful relationship" and that they do activities together, cook together, go to the park, and do things as a family. She also testified that Cortney treats Brittain's husband like a father. Similarly, Covington's mother testified that he is "a great dad," and that they grill together, go to the park and feed birds, and go four-wheeling.

Following the trial, the district court entered a detailed order setting forth its findings. The district court found that numerous material changes in circumstances have occurred since the court's August 2007 order and noted that this was "an extremely close case." The court noted that Brittain's financial situation was superior to Covington's and that she had remarried and her relationship appeared stable. The court then expressed concern with anger issues displayed by Covington in his past relationship. However, the court found that there was "no evidence in the record that Cortney is anything other than a bright, well-mannered, and well-adjusted young girl" and that both Steffes and Steinbeck testified to the fact that Covington is a concerned parent who is properly raising his minor child. The court expressed concern as to how Cortney would adjust if the court were to change her physical possession from Covington to Brittain, and in the court's final analysis, the court determined that Covington, with his mother's assistance, "has been able to give Cortney a stable and loving home in which to thrive." Thus, the district court denied Brittain's request to modify custody and the court relinquished legal custody of Cortney to Covington. Brittain was also ordered to pay the costs of the proceeding, including a $300 expert witness fee for Steinbeck.

## ASSIGNMENTS OF ERROR

Brittain contends that the district court erred in (1) refusing to take judicial notice of a guardian ad litem (GAL) report referenced in an August 14, 2007, court journal entry and order; (2) concluding that placing legal and physical custody of the minor child with Covington was in Cortney's best interests; and (3) ordering Brittain to pay the expert witness fee for one of Covington's expert witnesses.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007); *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011).

- 4 -

ANALYSIS

*Judicial Notice.*

Brittain claims that the district court erred in refusing to take judicial notice of a GAL report referenced in an August 14, 2007, court journal entry and order. At the May 2012 hearing, Brittain requested that the district court take judicial notice of the December 2006 GAL report. Covington objected that the GAL report was irrelevant to the proceedings, that it had not been updated, and that it was offered when the court made its August 2007 decision and offered nothing to the current proceedings. The district court sustained the objection and did not consider the report.

In support of her argument that the district court erred in failing to take judicial notice of the GAL report, Brittain cites to *Bartlett v. Bartlett*, 193 Neb. 76, 225 N.W.2d 413 (1975). In *Bartlett, supra*, the parties' original dissolution decree was entered in 1973 with the court's retaining legal custody of the parties' minor children and physical custody awarded to the mother. After the entry of the decree, the father learned of new evidence related to the mother's conduct prior to the entry of the decree pertaining to her moral fitness. The father filed an application to modify custody, a hearing was held, the father presented the aforementioned evidence, and the court held that custody was modified granting physical custody of the children to the father.

The mother in *Bartlett* appealed to the Nebraska Supreme Court, which considered the question of whether evidence of a party's conduct which occurred prior to the entry of the dissolution decree was admissible at a subsequent child custody hearing. The Nebraska Supreme Court acknowledged that ordinarily, applications for modification of a dissolution decree regarding the care, custody, and support of minor children must be based upon new facts and circumstances which have arisen since the entry of the decree. *Bartlett, supra*. However, the court distinguished the case before it on the basis that the district court had retained legal custody of the children, whereas the aforementioned rule ordinarily applied when the court had made a definite award of custody to one party or another. *Id*. In making this distinction, the Nebraska Supreme Court stated:

> It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties. Such an order is ordinarily temporary and probationary in nature and reserves in the court the power to make further summary disposition of minor children when it becomes apparent that their best interests require it. There has not been a final determination of fitness in regard to either party. That question remains open and subject to determination after further notice and hearing. It is not res judicata. *The court is at liberty to consider the evidence submitted in the original proceeding and pertinent material evidence of which the court was not apprised.*

*Bartlett*, 193 Neb. at 78, 225 N.W.2d at 415 (emphasis supplied).

Based on the Supreme Court's holding in *Bartlett, supra*, since the district court in the instant case had retained legal custody of Cortney in 2007, the district court was "at liberty" to consider the GAL report which had been submitted at the previous hearing. One of the

- 5 -

definitions of "liberty" is "the power to do as one pleases." Merriam-Webster's Collegiate Dictionary 669 (10th ed. 2001). Based upon the language used by the Nebraska Supreme Court in *Bartlett, supra*, a district court has the discretion to determine whether or not to consider evidence submitted at a prior hearing. In the instant case, the district court elected not to consider the GAL's report. We cannot say that the district court erred in its decision not to consider that evidence.

*Custody.*

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002); *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011). Brittain does not dispute the district court's determination that there has been a material change of circumstance for each party. Likewise, she does not dispute the conclusion that the district court did not find either party to be unfit. Her assigned error is limited to arguing that the district court erred in concluding that placing legal and physical custody of Cortney with Covington was in Cortney's best interests. Therefore, we limit our discussion to the best interests of the child.

When deciding custody issues, the best interests of the minor children are the court's paramount concern. *Mann, supra*. See *Hassenstab v. Hassenstab*, 6 Neb. App. 13, 570 N.W.2d 368 (1997). In determining the best interests of a child, a court can look to the relationship of the child with each parent; the general health, welfare, and social behavior of the child; the moral fitness of the parents; the respective environments each parent offers; the emotional relationship between the child and the parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the capacity of each parent to provide physical care and to satisfy the needs of the child. *Mann, supra*. See *McDougall v. McDougall*, 236 Neb. 873, 464 N.W.2d 189 (1991). Consideration of each of these factors requires an understanding of the parents' and the child's history, in addition to an awareness of their current circumstances. *Mann, supra*.

In the instant case, there have been numerous and substantial changes in the parties' lives since the last hearing was held in August 2007. Because of this, we find especially appropriate the application of the rule that, generally, evidence of a parent's behavior during the year or so prior to a hearing on a motion to modify is of more significance than the behavior prior to that time. *Mann, supra*. See *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004).

For the past 1½ years, Brittain has maintained a stable residence and has been in a stable relationship. However, we find concerning Brittain's failure to remain current on her $50 per month child support obligation, despite acknowledging that her family's financial situation was improved to the point that she could be a stay-at-home mother, as well as her apparent lack of interest in Cortney's school progress as demonstrated by her failure to communicate with Cortney's teacher.

Covington has also maintained a stable residence for the past 1½ years, and since January 2011, Covington has been focused on making Cortney's homelife stable and consistent. Covington has shown himself to be a concerned and involved parent who is doing the best that

he can, and he is doing a good job of parenting Cortney. The evidence is that Cortney is a bright, well-adjusted young girl who is doing very well in school, she is a positive role model for other students, and she has friends in her neighborhood. From our de novo review of the evidence, it is in Cortney's best interests to remain in Covington's physical custody and for Covington to be granted legal custody of Cortney. Consequently, we cannot say that the district court abused its discretion in determining that placing legal and physical custody of Cortney with Covington was in Cortney's best interests.

*Expert Witness Fee.*

Brittain contends that the district court abused its discretion in ordering her to pay the $300 fee for Steinbeck, who was the expert witness called by Covington. In a paternity action, an appellate court reviews an award of expert witness fees de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Drew ex rel. Reed v. Reed*, 16 Neb. App. 905, 755 N.W.2d 420 (2008). The district court found, and the evidence supports such finding, that Brittain's financial situation at the time of trial was superior to Covington's. Consequently, we cannot say that the court's order requiring Brittain to pay the $300 expert witness fee was an abuse of discretion.

## CONCLUSION

Having considered and rejected Brittain's assigned errors, we affirm the district court's order.

AFFIRMED.

PIRTLE, Judge, participating on briefs.