MONTY S. AND TERESA S., APPELLEES, V.
JASON W. AND REBECCA W., APPELLANTS.
___ N.W.2d ___

Filed May 29, 2015.    No. S-14-879.

1. **Habeas Corpus: Child Custody: Appeal and Error.** A decision in a habeas corpus case involving custody of a child is reviewed by an appellate court de novo on the record.
2. **Parental Rights: Adoption: Proof.** The burden is on the natural parent challenging the validity of a relinquishment of a child for adoption to prove that the relinquishment was not voluntarily given.
3. **Parental Rights: Adoption.** In the absence of threats, coercion, fraud, or duress, a properly executed relinquishment of parental rights and consent to adoption signed by a natural parent knowingly, intelligently, and voluntarily is valid.
4. **Adoption.** In a private adoption, the child is relinquished directly into the hands of the prospective adoptive parents without interference by the state or a private agency.
5. **Parental Rights.** A natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.
6. ____. A valid relinquishment of parental rights is irrevocable.
7. ____. The only right retained by the natural parents who have signed relinquishments of parental rights is the right to commence an action seeking to be considered as a prospective parent if the best interests of the child so dictate.
8. ____. Where the relinquishment of rights by a natural parent is found to be invalid for any reason, a best interests hearing is held.
9. ____. A change of attitude subsequent to signing a relinquishment of parental rights is insufficient to invalidate the relinquishment.
10. **Parental Rights: Adoption.** After a decree of adoption has been entered in a private adoption case, the natural parents of an adopted child shall be relieved of all parental duties and responsibilities for the child and shall have no rights over the child.
11. **Adoption.** Adoption was unknown to the common law and is a creature of statute.
12. ____. Adoptions are permissible only when done in accordance with statute.

Appeal from the District Court for Richardson County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Jeanette Stull and Justin J. Knight, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellants.

Steven J. Mercure and Jessica D. Meyer, of Nestor & Mercure, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Teresa S. gave birth to an infant son in July 2013. Two days later, Teresa and Monty S., Teresa's husband and the child's biological father, each signed a consent and relinquishment, indicating that each gave up any parental rights to the child and further that they consented to the child's adoption by Jason W. and Rebecca W.

Teresa and Monty subsequently filed a motion for habeas corpus seeking return of the child. The couple alleged that the consents and relinquishments they signed were invalid. Following a trial, the district court concluded, on grounds not argued by Teresa and Monty, that their consents and relinquishments were invalid. Rebecca and Jason appeal. We affirm.

## BACKGROUND

The parties in this case were friends. Rebecca was unable to have children, and a foster child that had been placed with Rebecca and Jason had been moved to a placement with biological relatives. Teresa and Monty "felt sorry" for Rebecca and discussed the possibility that Teresa might serve as a surrogate for the couple. Rebecca and Jason ultimately agreed, and it was decided that Teresa and Monty would conceive a child and, at the time of its birth, give that child to Rebecca and Jason for private placement adoption.

The parties agree that from the beginning, and certainly throughout Teresa's pregnancy and the days immediately following the child's birth, the intent was that Teresa and Monty would be a part of the child's life. The parties mostly agree that no discussions beyond this general agreement took place; it was an understanding, and not a detailed plan, that a relationship would exist.

Teresa testified that in her view, an "open" adoption was one in which the "adoptive parents [were] open to allowing the biological parents to be a part of his life and that his

records would never be sealed." The record suggests that this was the general definition of the term as understood by all the parties.

Monty testified that he and Teresa were not informed that "open" adoptions were essentially unenforceable in Nebraska. This was confirmed by the testimony of the attorney conducting the meeting, as well as by Rebecca and Jason. Teresa and Monty also testified that had they known that they would not be able to maintain contact with the child, they would not have signed the relinquishment forms.

Teresa gave birth to the child in July 2013. The child went to Rebecca and Jason's home from the hospital. Two days after the child's birth, both couples and the child rode together to a meeting at the office of Rebecca and Jason's attorney. During that meeting, Teresa and Monty each signed separate documents relinquishing their parental rights and consenting to the adoption by Rebecca and Jason. At this meeting, Rebecca tore up the nonconsent forms presented to Teresa and Monty and announced that they were unnecessary because the adoption was to be "open." Nonconsent forms are signed by biological parents to signify the intent that adoption records be sealed. Where the forms are not signed, such records are not sealed.

On May 12, 2014, Teresa and Monty filed a petition for habeas corpus, seeking return of the child. Teresa and Monty alleged that their consents and relinquishments were invalid for a number of reasons, including fraud, duress, and the failure to present the nonconsent adoption forms prior to signing the relinquishments.

The district court rejected all of Teresa and Monty's allegations. Nevertheless, relying upon *McCormick v. State*,[1] the district court invalidated the relinquishments, concluding that the parties' plan for an "open" adoption invalidated the relinquishments as conditioned upon the retention of some parental rights.

Following a best interests hearing, custody of the child was placed with Teresa and Monty. Rebecca and Jason appeal.

---

[1] *McCormick v. State*, 218 Neb. 338, 354 N.W.2d 160 (1984).

## ASSIGNMENTS OF ERROR

On appeal, Rebecca and Jason assign, reordered, that the district court erred in (1) excluding evidence of postrelinquishment visits by Teresa and Monty and why those visits were discontinued and (2) holding that the consents were conditioned upon the retention of parental rights and were therefore invalid.

## STANDARD OF REVIEW

[1-3] A decision in a habeas corpus case involving custody of a child is reviewed by an appellate court de novo on the record.[2] The burden is on the natural parent challenging the validity of a relinquishment of a child for adoption to prove that the relinquishment was not voluntarily given.[3] In the absence of threats, coercion, fraud, or duress, a properly executed relinquishment of parental rights and consent to adoption signed by a natural parent knowingly, intelligently, and voluntarily is valid.[4]

## ANALYSIS

*Evidentiary Objections.*

We first turn to Rebecca and Jason's contention that the district court erred in not admitting certain evidence of the reasons why Rebecca and Jason ceased to allow Teresa and Monty visitation with the child. That evidence generally showed that Rebecca and Jason initially had the full intent of allowing Teresa and Monty to be a part of the child's life until Teresa's visits became so frequent that they began to interfere with Rebecca and Jason's relationships with the child.

Assuming without deciding that this evidence was relevant to Rebecca and Jason's defense that their actions did not amount to fraud or misrepresentation, and thus should have been admitted, we find any such error to be harmless. In fact, the district court did not find any fraud or misrepresentation in the signing of the relinquishments. Rather, it found

---

[2] *Brett M. v. Vesely*, 276 Neb. 765, 757 N.W.2d 360 (2008).

[3] *Hohndorf v. Watson*, 240 Neb. 368, 482 N.W.2d 241 (1992).

[4] *Id.*

that the open adoption agreement itself acted as coercion and invalidated the relinquishments. Because Rebecca and Jason prevailed on the fraud and misrepresentation issues, they suffered no prejudice by the failure of the district court to admit this evidence.

There is no merit to this assignment of error.

*Validity of Relinquishments.*

[4] We now turn to whether the relinquishments in this case were invalid. This case presents a private adoption. In this situation, the child is relinquished directly into the hands of the prospective adoptive parents without interference by the state or a private agency.[5]

[5-7] A natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.[6] A valid relinquishment is irrevocable.[7] The only right retained by the natural parents is the "right to commence an action seeking . . . to be considered as a prospective parent if the best interests of the child so dictate. The natural parent's rights are no longer superior to those of the prospective adoptive family."[8]

[8] Where the relinquishment of rights by a natural parent is found to be invalid for any reason, a best interests hearing is nevertheless held: "The court shall not simply return the child to the natural parent upon a finding that the relinquishment was not a valid instrument."[9]

[9] Such relinquishments are generally upheld. We have held repeatedly that a change of attitude subsequent to signing a relinquishment is insufficient to invalidate the relinquishment.[10] Rather, as we noted above, in the absence of threats, coercion, fraud, or duress, a properly executed relinquishment of parental rights and consent to adoption signed

---

[5] *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991).

[6] *Id.*

[7] *Id.*

[8] *Id.* at 791, 467 N.W.2d at 877.

[9] *Id.* at 791-92, 467 N.W.2d at 878.

[10] *Yopp v. Batt, supra* note 5.

by a natural parent knowingly, intelligently, and voluntarily is valid.[11]

[10] Neb. Rev. Stat. § 43-111 (Reissue 2008) provides that after a decree of adoption has been entered in a private adoption case, the natural parents of an adopted child shall be relieved of all parental duties and responsibilities for the child and shall have no rights over the child.

In this case, the district court explicitly found that there were no threats, fraud, or duress involved in the execution of Teresa and Monty's relinquishments. But the district court, relying on this court's decision in *McCormick v. State*,[12] concluded that the relinquishments were conditioned upon the retention of some parental rights and were therefore invalid.

*McCormick* involved the parental rights of Richard and Joan McCormick to their son. The State had filed for termination of those rights. Just prior to the final hearing on the State's motion to terminate, a meeting took place between the McCormicks, their counsel, the guardian ad litem, and their caseworker. It was explained to the McCormicks that if they signed a relinquishment of their parental rights, there was a possibility that an "open" adoption could be arranged if cooperative adoptive parents were found. This idea was originally suggested by the caseworker. The McCormicks were told by their counsel that it was likely the court would terminate their parental rights if the hearing were held.

The McCormicks signed the relinquishments. Despite the conversation regarding the "open" adoption, the McCormicks were not permitted visitation with their son after they signed the relinquishments. The McCormicks filed a motion for a writ of habeas corpus, which was denied.

The McCormicks appealed. The court found that the McCormicks' relinquishments were coerced by the promise of the open adoption. We noted that "[a] relinquishment conditioned upon the retention of some parental rights is invalid."[13]

---

[11] *Id*.

[12] *McCormick v. State, supra* note 1.

[13] *Id*. at 344, 354 N.W.2d at 163.

*McCormick* was decided in 1984. By 1988, the Legislature had passed 1988 Neb. Laws, L.B. 301, which provided for exchange-of-information contracts in cases involving children in temporary foster care. The legislative intent states:

> The Legislature finds that there are children in temporary foster care situations who would benefit from the stability of adoption. It is the intent of the Legislature that such situations be accommodated through the use of adoptions involving exchange-of-information contracts between the department and the adoptive or biological parent or parents.[14]

An exchange-of-information contract is defined by statute as a "two-year, renewable obligation, voluntarily agreed to and signed by both the adoptive and biological parent or parents as well as the department."[15] And Neb. Rev. Stat. § 43-158 (Reissue 2008) provides:

> When the department determines that an adoption involving exchange of information would serve a child's best interests, it may enter into agreements with the child's proposed adoptive parent or parents for the exchange of information. The nature of the information promised to be provided shall be specified in an exchange-of-information contract and may include, but shall not be limited to, letters by the adoptive parent or parents at specified intervals providing information regarding the child's development or photographs of the child at specified intervals. . . . Nothing in [these] sections . . . shall be interpreted to preclude or allow court-ordered parenting time, visitation, or other access with the child and the biological parent or parents.

Neb. Rev. Stat. § 43-160 (Reissue 2008), also enacted by L.B. 301, seems directed at this court's decision in *McCormick*: "The existence of any agreement or agreements of the kind specified in section 43-158 shall not operate to impair the validity of any relinquishment or any decree of adoption entered by a court of the State of Nebraska."

---

[14] Neb. Rev. Stat. § 43-155 (Reissue 2008).

[15] Neb. Rev. Stat. § 43-156 (Reissue 2008).

By 1993, the exchange-of-information contract had been supplemented with the communication or contact agreement set forth in Neb. Rev. Stat. § 43-162 (Reissue 2008). That section provides:

> The prospective adoptive parent or parents and the birth parent or parents of a prospective adoptee may enter into an agreement regarding communication or contact after the adoption between or among the prospective adoptee and his or her birth parent or parents if the prospective adoptee is in the custody of the Department of Health and Human Services. Any such agreement shall not be enforceable unless approved by the court pursuant to section 43-163.

While there is not a single definition of an "open" adoption, in our view, it is clear that these statutorily-provided-for agreements would fit within the general understanding of such an adoption.

The enactment of the exchange-of-information contracts and communication or contact agreements shows us that the Legislature clearly responded to this court's decision in *McCormick*. However, it did so in a limited way: as is noted above, these contracts are available only in foster care situations. Not included in these statutes or covered by other statutes are private adoptions such as the one presented by these facts.

[11,12] Adoption was unknown to the common law and is a creature of statute.[16] As such, adoptions are permissible only when done in accordance with statute. While the Legislature responded to the *McCormick* holding in the foster-adopt situation, thus legitimizing the practice in that context, it has left *McCormick* untouched insofar as it applies to private adoptions. Thus, the central holdings of McCormick—that the effect of an open adoption acts as the retention of some parental rights and, further, that the retention of some parental rights renders a relinquishment invalid—remain intact.

In this case, the record is clear, and the parties do not dispute, that an open adoption was planned. But this retention

---

[16] *Wulf v. Ibsen*, 184 Neb. 314, 167 N.W.2d 181 (1969).

of parental rights, however slight, is sufficient to invalidate Teresa's and Monty's relinquishments.

We are not unsympathetic to the plight of adoptive and biological parents as they navigate through the highly emotional process of adoption. And it may be that in some situations, benefit could result from open arrangements such as those endorsed by the Legislature in the foster-adopt situation. At the same time, it is not this court's place to make such policy judgments. Until the Legislature acts to approve of these open adoption arrangements in a private adoption context, this court will not recognize them and will instead continue to hold that relinquishments signed with the promise of such an open adoption are invalid.

Rebecca and Jason's second assignment of error is without merit.

## CONCLUSION
The decision of the district court is affirmed.

Affirmed.

McCormack, J., participating on briefs.